Filed 4/16/25  P. v. Chatalian CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN CHATALIAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B334487<br>(Super. Ct. No. 2023016568)<br>(Ventura County) |

Brian Chatalian appeals from the judgment after a jury convicted him of indecent exposure with a prior conviction of that offense (Pen. Code, § 314, subd. 1).  The trial court found true allegations that he served a prior prison term and was on parole when the offense was committed.  (Cal. Rules of Court, rule 4.421(b)(3) & (4).)  The court sentenced Chatalian to three years in state prison.

Chatalian contends the trial court erred when it admitted evidence of uncharged prior incidents of indecent exposure, and the conviction is not supported by sufficient evidence of his intent.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY
### *Current offense*

Chatalian was found lying face down unresponsive in a parking lot and was taken by ambulance to the hospital. He was heavily intoxicated and did not know where he was. He could tell nurse C.V. only his first name. He was not able to engage in conversation with the nurses.

Chatalian was placed in an emergency room bed in a dimly lit room directly across from the nurses' station. The room was in the central "hub of the emergency department," with high foot traffic of staff, patients, and family members. The room had a glass door with the curtains open to allow nursing staff to observe him to ensure his safety.

C.V. walked by Chatalian's room 15 to 20 minutes after his arrival. His hospital gown was raised to his chest. His hand was in his underwear and he appeared to be masturbating. She asked him to stop. He made eye contact with her and continued masturbating. He complied with her second request to stop.

About thirty minutes later, C.V. saw him masturbating again. He continued after making eye contact with her but stopped after her second request.

C.V. later saw Chatalian sitting up. His hospital gown was now completely off, his boxer shorts were down almost to his knees, and he was stroking his penis. C.V. could see his penis and genitals. She asked him to stop and told him he was in a public area and was not allowed to expose himself in that manner. He made eye contact with her and continued masturbating. He shouted, "Fuck you. Do you know who I am? Who the fuck are you? I'm the king."

Charge nurse M.B. later saw from her desk that Chatalian

2

was masturbating. His shorts were pulled down and she saw his erect penis exposed. He made eye contact with her. She yelled from her desk for him to stop. He made no attempt to conceal his actions. He stopped masturbating when she got to the doorway of his room.

Chatalian continued yelling in intervals during the two and a half hours he was in the hospital. At some point, he told M.B. to leave him alone and go home. He also told C.V. to leave him alone so he could sleep.

Chatalian's masturbation made C.V. feel "very uncomfortable." She found it "very unsettling, and when included with the aggression and shouting, it was very threatening." M.B. felt "uncomfortable" and was "very frustrated" because she was "sitting there watching a grown man continue to masturbate in front of [her] no matter how many times [she] asked him to stop."

When police arrived, Chatalian was intoxicated. He was momentarily unsteady on his feet but walked to the police car without falling. He gave his full name and conversed with officers, answering some questions but not others. He followed instructions to sit down. The officers believed Chatalian understood them and could respond appropriately.

*Prior incidents*

On motion of the prosecution and over defense objection, the trial court admitted evidence that Chatalian committed three prior incidents of indecent exposure. (Evid. Code,[1] §§ 1101, subd. (b), 1108, 352.) The incidents, which were all within 18 months before the current offense, occurred outside a pizzeria, inside a

---

[1] Undesignated statutory references are to the Evidence Code.

bank, and inside a fast-food restaurant.

### 1. Pizzeria incident

A 17-year-old girl walking by a pizzeria saw Chatalian standing in front. His pants were around his knees and his genitals were exposed. He was screaming and masturbating. When he looked in her direction he masturbated faster and said the word "cum" (ejaculation) to her. She changed her route to avoid him.

Police officers responded and found Chatalian heavily intoxicated. His shorts were down toward his knees and his lower body was completely exposed. An officer saw Chatalian's erect penis and testicles, and saw him masturbating. When Chatalian saw the officer, he sat on the ground and covered himself with his clothing.

At the jail, Chatalian made sexually explicit comments to the prebooking nurses, spoke to them about his penis (which he referred to as "the king"), and asked them, "How bad do you want me?"

### 2. Bank incident

Chatalian was in line at a bank. He was not paying attention and had trouble standing. The manager thought he might be disabled and brought him into an office. She believed he was coherent and knew what he was doing. As she pulled out a chair for him, he put both hands on her chest and moaned. He then unbuckled his belt, took out his penis, and masturbated, moaning and breathing heavily. The manager was disgusted. She screamed and ran out of the office.

Chatalian passed out. After police woke him, he said he had been drinking. At the jail, he yelled several times to a female probation officer that he "wanted to lick every part of her body."

### 3. Fast-food incident

The manager of a fast-food restaurant saw Chatalian seated in the dining room with his zipper down and his hand inside his pants. His hand was moving and she could see part of his penis. When she approached him and asked if he was going to purchase anything, he continued to move his hand inside his pants. The restaurant was busy and other customers also noticed his actions.

Chatalian appeared to be intoxicated but he understood the manager's statements. As she walked him out of the restaurant, he asked if she "knew who the sexiest man in the world was." He started to walk away but then turned and "speed walk[ed]" towards her. She went inside the restaurant and called police.

A police officer asked Chatalian what he was doing with his hand down his pants. He responded, "show my huge penis."

### DISCUSSION

*Uncharged prior offenses*

Chatalian contends the trial court abused its discretion when it admitted evidence of uncharged prior incidents of indecent exposure. We disagree.

*1. Statutory provisions*

Evidence of prior bad acts is generally "inadmissible when offered to prove [a person's] conduct on a specified occasion." (§ 1101, subd. (a).) But section 1101 does not prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .)." (§ 1101, subd. (b).) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."

5

(*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Section 1108, subdivision (a) provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." " 'Sexual offense' " includes violation of Penal Code section 314. (§ 1108, subd. (d)(1)(A).) Evidence may be admitted pursuant to section 1108 for any proper purpose, including to show a defendant's propensity or disposition to commit a sexual offense. (*People v. Falsetta* (1999) 21 Cal.4th 903, 922-924.)

Chatalian does not contend the prior offenses were irrelevant under sections 1101 or 1108. He contends instead that the trial court abused its discretion in admitting the evidence because "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

We review for abuse of discretion the admission of prior offenses pursuant to sections 1101, 1108, and 352. (*People v. Falsetta*, *supra*, 21 Cal.4th at pp. 917-919.) "[T]he discretionary ruling will ' "not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1119.)

### 2. Trial court's exercise of discretion

Chatalian contends the record does not show the trial court exercised its section 352 discretion regarding the prior offenses.

6

He is incorrect.

"[A]lthough the record must affirmatively show that the trial court weighed prejudice against probative value in admitting evidence of prior bad acts," we may "infer an implicit weighing by the trial court on the basis of record indications well short of an express statement" such as "argument of counsel or comments by the trial court, or both, touching on the issues of prejudice and probative value from which we might infer that the court was aware of the Evidence Code section 352 issue and thus of its duty to weigh probative value against prejudice." (*People v. Padilla* (1995) 11 Cal.4th 891, 924.)

The trial court here conducted the required weighing. The parties' briefs, which the court stated it read, discussed the standards for section 352 balancing regarding admission of the prior incidents. The trial court stated the defense argument was "fairly characterized as a 352 consideration that since these are identical charges to what's being charged here that it's liable to unduly prejudice the jury, overcoming any probative value." The court noted that section 1108 permitted use of prior incidents for propensity, and that the degree of similarity was important regarding lack of mistake under section 1101. The court stated the "issue outstanding then is prejudice versus probative value."

The court specifically considered whether the touching of the bank manager's breast was admissible regarding sexual intent but ruled that fact was not "of such inflammatory value to keep it from coming in." The court considered the number of witnesses for the prior incidents and said it would view the police body camera videos to "get a sense of how much time is likely to be consumed and whether, in light of the concerns expressed, I'm going to direct [the prosecutor to] pare it down from that." The

7

court ruled the prior incidents were admissible but excluded evidence that they resulted in convictions.

The court stated that "the legislature has made a finding presumptively—well, certainly presumptively—that the probative value outweighs any prejudicial impact, particularly where the offense did not involve any conduct that is more extreme." Our Supreme Court has recognized the legislative intent that section 1108 create a "presumption in favor of admissibility." (*People v. Cordova* (2015) 62 Cal.4th 104, 133; *People v. Loy* (2011) 52 Cal.4th 46, 62.) The record here shows the trial court understood its obligation to weigh the probative value against its prejudicial impact.

### 3. Factors regarding admissibility

In weighing admissibility pursuant to sections 1108 and 352, five "particularly significant" factors are: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*People v. Nguyen, supra,* 184 Cal.App.4th at p. 1117.) Those factors support the trial court's exercise of discretion here.

### a. Probative value

First, the prior offenses had significant probative value to

show intent and absence of mistake or accident. They supported the conclusion that Chatalian *willfully* exposed his genitals in the presence of others, and did so for the purpose of sexual arousal, gratification, or affront. (Pen. Code, § 314, subd. 1; *People v. Archer* (2002) 98 Cal.App.4th 402, 404-405.) His sexual motivation was demonstrated when he masturbated faster as a girl walked by the pizzeria and he made a statement to her about ejaculation. He demonstrated his sexual motivation in the bank when he placed his hands on the manager's chest before exposing his penis and masturbating. He admitted he masturbated in the fast-food restaurant for the purpose of showing his penis. All the victims were affronted by his unwanted conduct. And his blatant display of his genitals in public places in the prior incidents refuted any inference that he mistakenly relied on a perception of privacy in his hospital room.

While similarity is "a relevant factor for the court to consider in exercising its discretion [citation], dissimilarity alone does not compel exclusion of the evidence. ' "[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." ' " (*People v. Cordova, supra*, 62 Cal.4th at p. 133.) The acts here were similar in that all showed his intent to expose his genitals in public for sexual gratification or to affront others.

Chatalian's intoxication in the hospital does not distinguish it from the previous offenses. He was intoxicated in all the offenses, and even passed out after exposing himself at the bank. The fact that Chatalian was brought to the hospital by

9

ambulance rather than going there voluntarily is not significant because the jury could conclude he knew he was in a public place when he regained consciousness and exposed himself.

### b. Comparative seriousness

Regarding the second factor, the prior offenses were not more inflammatory than the charged offense, but were "similar in character." (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 919.) They all involved Chatalian violating the same Penal Code section by exposing his genitals and masturbating in public and making sexual statements or shouting obscenities to women. In some regards, the charged offense was more serious because it involved multiple incidents over a period of several hours with victims who were obligated to continue interacting with him.

### c. Remoteness

The third factor—remoteness in time—does not favor exclusion because the prior offenses all occurred in the preceding calendar year, only 10 to 18 months before the charged offense.

### d. Danger of confusion

The evidence does not support the fourth factor, the likelihood of confusing or distracting the jury. All were separate incidents in different places against unrelated victims. The jury was properly instructed that evidence of the uncharged offenses "is only one factor to consider along with all the other evidence" and "is not sufficient by itself to prove" the charged offense. (CALCRIM No. 1191A, modified.)

### e. Consumption of time

Chatalian is correct that the prior crimes evidence took a significant amount of trial time. One victim and one or two police officers testified as to each incident, and body camera evidence was shown. The testimony for the prior offenses consumed 153

10

pages of the reporter's transcript, compared to 201 pages for the current offense.  Nevertheless, this is not a case where "the time consumed trying the uncharged offenses so dwarfed the trial on the current charge as to unfairly prejudice the defendant." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42.)  Chatalian concedes that the "critical question" at trial was whether "he intended to direct public attention" to his genitals for a sexual purpose.  Because evidence of a defendant's state of mind "is almost inevitably circumstantial" (*People v. Bloom* (1989) 48 Cal. 3d 1194, 1208), we conclude this factor does not favor exclusion.

Weighing these factors, we conclude admission of the prior crimes evidence was not " ' "arbitrary, capricious or patently absurd." ' "  (*People v. Nguyen, supra*, 184 Cal.App.4th at p. 1119.)

### 4. Due process

Because the court did not abuse its discretion in admitting the prior crimes evidence, we conclude its admission did "not offend due process" and did not "render [Chatalian's] trial fundamentally unfair." (*People v. Falsetta, supra*, 21 Cal.4th at pp. 913, 915.)

### Substantial evidence

Chatalian does not dispute that he exposed his genitals in a public place.  He contends instead that substantial evidence did not establish he did so to direct public attention to his genitals for the purpose of sexual arousal, gratification, or affront.  We are not persuaded.

The court correctly instructed the jury regarding the elements of indecent exposure (Pen. Code, § 314, subd. 1):

"1.  The defendant willfully exposed his genitals in the presence of another person or persons who might be offended or

11

annoyed by the defendant's actions;

"AND

"2.  When the defendant exposed himself, he acted lewdly by intending to direct public attention to his genitals for the purpose of sexually arousing or gratifying himself or another person, or sexually offending another person.

"Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"It is not required that another person actually see the exposed genitals."  (CALCRIM No. 1160; *People v. Archer*, *supra*, 98 Cal.App.4th at pp. 405-406.)

On appeal, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value. . . . In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"The standard of review is the same when the prosecution relies on circumstantial evidence."  (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024.)  "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."  (*People v. Bloom*, *supra*, 48 Cal.3d at p. 1208.)  The jury here was similarly instructed: "An intent and mental state may be proved by circumstantial evidence."

12

Substantial evidence here supports the jury's verdict. Chatalian was in direct view of a nurses' station in a busy hospital corridor. He was warned it was a public place where he could not expose himself. He exposed his genitals by removing his hospital gown and pulling down his shorts. He demonstrated his intent to derive sexual gratification when he continued exposing himself and masturbating while making eye contact with the nurses. And his repeated conduct as nurses pleaded with him to stop was evidence of his intent of "sexually insulting or offending the other person." (*People v. Archer, supra*, 98 Cal.App.4th at p. 406, italics omitted.)

Nor did evidence of Chatalian's intoxication preclude a guilty verdict. The jury was properly instructed that it could consider evidence of voluntary intoxication "in deciding whether the defendant acted with the specific intent to direct public attention to his genitals for the purpose of sexually arousing or gratifying himself or another person, or sexually offending another person." (CALCRIM No. 3426, modified; Pen. Code, § 29.4.) The evidence of Chatalian's intoxication included the extent to which he did or did not answer questions or follow instructions, his ability to walk without falling, and the opinions of those who interacted with him. We do not reweigh the evidence but defer to the jury's evaluation of the credibility of witnesses and its resolution of conflicts in the testimony. (*People v. Mumin* (2023) 15 Cal.5th 176, 202.) Substantial evidence supports the jury's determination that notwithstanding his intoxication, Chatalian acted with the required intent.

The jury could also properly rely on the prior incidents as evidence of intent. Our Supreme Court has "long recognized 'that if a person acts similarly in similar situations, he probably

harbors the same intent in each instance' [citations] and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.) Chatalian's sufficiency of the evidence challenge fails.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

14

David R. Worley, Judge

Superior Court County of Ventura

_____


Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.